17-1909 Mr. Gunter, you may proceed. Good morning, your honors, and may it please the court. The District Court erred in holding that the asserted claims were not entitled to their earliest effective filing date. At the lower court level, defendants raised this issue on summary judgment, and they said that the asserted claims exceeded the scope of the disclosure of their earliest application. They raised this on four specific grounds. First, claims that were not limited to a system that required a bracket, or excuse me, a watcher. Can you point to the 209 application where it describes a watcherless type assembly? Yes, your honor. I would point to, I believe, the 301 application is the earliest application, and I would guide the court's attention to figure 41 of the 301 application. You're looking to claim priority to the 209 application, right? We are looking to get to the earliest application, which is the 301 application. It's filed in 2009. This is the application that we placed at the PIVX site, 2212. 2297 in the record, figure 41? Yes, your honor, figure 41. And there was an argument below that this was incomplete drawing, etc., etc.? That was raised by defendants below. I didn't understand you on appeal to be arguing so much that figure 41 doesn't disclose a watcherless application, but that the question of whether or not the structure that would receive it, this goes to the Tronso issue. Yes, your honor. Maybe I'm wrong. Do you still maintain the argument, the factual argument, that figure 41 shouldn't be taxed because it's incomplete? We do not believe figure 41 is incomplete. We believe that to the extent a washer was required in figure 41, it would have been shown. So we believe figure 41 shows an embodiment in which no washer is required. We believe this is substantiated again in the corresponding text for figure 41. That's at appendix 2225 in which there was no washer described in the corresponding text. Now, I think to get to your point, your honor, about the Tronso exception, we equally believe that the court erred in its understanding and application of the Tronso exception. We believe whenever the Tronso case is looked at and applied correctly here, we believe that that case does not apply. What I really understood you to be saying was you thought this was the Tronso issue should not have been taken off on summary judgment. You were entitled to a trial on that issue. I believe that as an initial matter, I believe that is correct. I think first and foremost, as a predicate issue, Tronso was not raised by defendants in their summary judgment, and we did not have a chance to respond to that specific issue. Well, the judge knew about it because it shows up in his opinion. That's correct. That's correct, your honor. And so on appeal— But even if it is in play, you'd say the decision should come off after a trial because you want to argue that this is an inappropriate setting in which to apply Tronso. That is correct, your honor. We believe that the Tronso exception does not apply to the facts of this case. There's a—in your opposition in summary judgment at page 40, appendix 3384, there's a confusing footnote that says, plaintiff is no longer pursuing infringement allegations against Echo 65 system or Echo 44 RNDD system and disputes any allegation of invalidity based on those products. In asserting your infringement claims initially, you believe those products caught all the elements of the asserted claims. And there's case law that says that factual assertions in pleadings are considered judicial admissions. Isn't that footnote a judicial admission? So we would say that the footnote goes against a judicial admission. So to the extent these products and claims were at issue in our infringement contentions, we were required—this case was in a slightly unusual procedural posture at the lower court. We had not yet entered claim construction and defendant wanted to go to an early summary judgment. How is it not a judicial admission of invalidity with respect to those— with respect to the claims asserted against those two products? Because those products are no longer at issue in this litigation. Those allegations of infringement are no longer at issue. We were required by court order— You withdrew. It was withdrawn, right? Correct, Your Honor. We were required by court order before the summary judgment process began to let the defendants know what claims and products were at issue. We did that in writing. And then at the summary judgment level, in writing again, in our responsive pleading, we once more stated that these—the ECO 65 product was not at issue and we disputed invalidity based on that. We believe that's—these—therefore, these allegations are no longer at issue in this litigation. Now, I think getting back to— There isn't any—is there any case law that resolves that issue or would this be the case? I mean, you're basically arguing that, yes, there is. As Judge Walters pointed out, there's a statement that's made in your footnote that is potentially pertinent and potentially damaging to your case. And your argument is that it shouldn't be held against you because the claims are not—were not asserted. Yes, Your Honor. So what I'm saying is I couldn't find a case that supports your argument nor could I find a case that was against you. And that may be the case, Your Honor, we cited— So this issue wasn't litigated below, right? This issue was not litigated below. If the case went back, it would clearly be litigated. Correct, and I believe— And then we would get an answer to the question of whether or not you are able to walk away from the admission on the grounds that the claims were not actually in suit. Yes, Your Honor. I would like the court's attention. We did cite a case— Presumably you would argue that we shouldn't resolve that issue on appeal. I would agree, Your Honor. I think that that is not the subject of this appeal at this time. I would court the—I would point the court's attention to the Cadeli v. United Transmission. So a litany of time bombs that are thrown at you from your adversary, right? Yes. About whether the chain is broken, other issues. That's correct. Presumably those issues would be alive if the case went back. That's correct, Your Honor. There were a series of arguments raised at the lower court level, and if I could turn— Why did you raise the arguments then? Pardon me, Your Honor? Why didn't you make the type of response that you're now looking for us to make for you on your behalf? I believe in our summary judgment. So the defendants raised on four points that there were lack of written description of the earliest application. Right. Well, you didn't respond to the question that Judge Wallach put to you here below because the issue hadn't been put to you. That is correct. I mean, the notion that you should be taxed for anticipation of your products because of a charge of an alleged infringement charge, right? So defendants raised that in their summary—in their opening summary judgment brief, which is in response, Your Honor, Judge Wallach, that was the footnote in response to that argument on the summary judgment level. And so that was the first time that we said— or excuse me, we said in writing before summary judgment began, and then once again in the summary judgment response, we said these issues are—these products are no longer in suit. And we don't have a ruling from the district court on that issue? We do not have a ruling, no, sir. So if I could point the court's attention back to what I do think that the appeal turned on, and that was the issue of whether— So we don't have a district court opinion also on the recessless claims, right? That is correct. And the—on the judicial end, the anticipation issue, the patents were filed too late or they break the chain. Those issues weren't resolved— The court did not—I believe you're referring to the immersion issue. The court did not decide on the immersion issue. What the court did hold is that the assertive claims to the extent— ultimately they found that there was a washerless disclosure. However, they erred in determining that the washerless disclosure should be limited to the exact bracket type seen in Figure 41. That's because of Tronzo. And that was in part because of Tronzo. We would argue that Tronzo does not apply, and then also we would point the court's attention to the explicit text. Once again, this is at 2225, and this is talking about combinations, sub-combinations, and permutations that are within the scope of the patent suit. So we have here—this is not— The boilerplate language. We would argue that it's not boilerplate. This isn't a chemical case. This is a case—it's a mechanical case with relatively few components, namely a— That'd be a fact question for persons of ordinary skill in the art to argue back and forth about? Yes, Your Honor. And we believe that— That goes further to your argument that summary judgment was inappropriate here. Yes, Your Honor. If the standard was a genuine issue of material fact, we believe that that paragraph is a express disclosure of combinations and sub-combinations, which would allow one of ordinary skill in the art to realize that the inventor at the time of filing knew that you could change these brackets amongst each other. The appellees argue that you never presented arguments on the genus-species distinction for the washerless assemblies below. Did you? No, Your Honor. That was an issue that was raised for the first time by the district court in rendering its opinion. And that's why in our opening brief, we tried to address that specific argument. We believe that the general rule, the Billstadt rule that a species may be enough to disclose for a later genus would apply here. Again, if appropriately applied to the factors of this case, we do not believe the Tronso exception applies. There are other exceptions to the general rule, one of which is unpredictability. And again, we don't believe that the unpredictability exception applies. Our case law certainly suggests that it's a more thorough review than the district court gave you. I would agree. On that particular issue. I would agree, Your Honor. Okay, you're into your rebuttal time. Would you like to reserve it? If I could just raise one other quick point. Sure. I would like to touch on the base bracket having at least one mounting hole. That was one other issue that the court below found that the claims were not supported by the earliest application. We would ask that the court look at the express language of the patents, and that is a base bracket having at least one mounting hole. If we go back to the earliest patent application, there are numerous examples of a base bracket having at least one mounting hole. So, for example, figures 20, 21, 40, and 41 are all examples of the base bracket having at least one mounting hole. We, therefore, think we're supported on that. And the last thing I would like to raise in my opening argument would be the disclosure of the Kreitzman declaration. This is the only declaration in the record of one of ordinary skill in the art. The appellees have not disputed that he is one of ordinary skill in the art or that he qualifies as one, and they also have not rebutted his testimony. The judge said it was conclusory. That is correct. The judge said it was conclusory, but we would argue that Mr. Kreitzman went through on a paragraph-by-paragraph analysis of the four claims raised by the defendants and found that there was a disclosure of a washable system, a system without a recess, a system that would allow for a washer to be below the flush. But he didn't talk about the Tronso issue because it hadn't been raised. Yes, Your Honor. And with that, I will pass the podium. Okay. Mr. Davis. Good morning. Police and court. There's no dispute that all of the asserted claims are invalid if not entitled to the 2009 application filing in a provisional application. As to the Figure 41 issue, it absolutely is an incomplete drawing. I think that we established that in the briefing and tried to illustrate that fact. Bracket 1700 in Figure 41 is illustrated in other figures as having an oblong hole. How do we get around the fact that you did not explicitly argue that the washerless embodiments in the 2009 application were inadequate because they only disclosed use of bracket 1700? The district court ruled on the issue that defendants raised below, and that was the district court correctly found that D3 had claimed too broadly. And the reason for that is that... I know what they did, but isn't this a case where D3 is right to hear arguments against it and have an opportunity to respond having been satisfied? No, Your Honor. I don't think so. They had the opportunity to respond at the hearing. They could have raised the issue with the district court's ruling below. And this issue was squarely in front of the court as to whether embodiments were claimed that do not require a washer. We call them the washerless embodiments that are covered by the claims but were not disclosed in the application. And one aspect of that is D3 has set forth its position very clearly on appeal, more clearly on appeal than it did below, that in its blue brief at pages 30 and 31, it clearly takes a position that figure 20 embodiments are claimed both with and without a washer. The 2009 application and all subsequent applications are very clear that those particular embodiments require a washer to seal, to keep out water, and also they have a recess to protect the washer from the elements. The 2009 application identified two problems with roof mount assemblies that it was purporting to solve. One of those problems was that water could get into the assembly through the hole in the top of the flashing. The other problem was implied that the washer could deteriorate by being exposed to the elements, and so the 2009 application stated that the washer is protected from the elements and it did that by encapsulating the washer above the flashing in a recess. And a third problem was identified in later applications, and that was that dielectric effects could be reduced or eliminated by use of the washer because it could separate components of the roof mount assembly made of different materials. And all three of those problems relating to roof mount assemblies all revolve around including the washer on top of the flashing. No other solution was ever disclosed or suggested in any of the applications for the problems that these roof mount assemblies purported to solve. And that was issued squarely before the district court. Are they entitled to claim any embodiment without a washer? And that was exactly the defendant's position. Any embodiment that is claimed without a washer is beyond the scope of the disclosure. If we agreed with the district court on the argument you're making now, would we have to address the arguments about later applications breaking the chain record? No, you would not have to address that argument. The washerless argument goes to all but two asserted claims, and the other two claims, 655 patent claim 8 and 339 patent claim 4, there's no dispute those claim a washer underneath the flashing, and that was never disclosed in any of the applications until it was first claimed in 2013. A washer above and below the flashing is arguably disclosed in the district court opinion in the 2012 application, but that's too late. It's undisputed if they don't get the 2009 date, all the claims are invalid. Now if I might address briefly. Even if we were to affirm on the washer below and on the one hole, will you still need the washerless in order to wipe out all the claims? In order for you to prevail in knocking out all the claims on the written description issue, you need us to agree with you that the 2009 application doesn't support washerless, which means we have to affirm the judge's reading on Tronso. That would be sufficient, Your Honor. However, there are other paths by which the defendants would still prevail on appeal. First, the district court's analysis under Tronso, certainly the defendants raised Tronso as a case, but the analysis was slightly different. I admit that the defendants proposed in their motion, but under either analysis, it's fully supported in the record on washerless, and the court was asking earlier about the 2007 eco-fastening system, and that's dispositive of all claims in our view. Does the applicability of the expert declaration, is it affected by whether or not Tronso applies? No, Your Honor. That declaration is far too conclusory on any issue to provide sufficient evidence to defuse a summary judgment motion. And the Tronso issue hasn't really been litigated. The question of how ordinary skilled artisans would look at this situation and whether they would find this was complicated, difficult art, or whether they would find it easier to fit this case into the body of law on genus species. We haven't had any expert declarations on that topic. Because it comes out of the blue from the district court judge, because once the district court judge decides that figure 41 does demonstrate an embodiment of washerless, then in order for him to find that the washerless system is not disclosed adequately for written description, he's got to go to the structure. And that's what he did. Well, two points in response to that, Your Honor. First, the judge at the district court incorrectly found the washerless embodiment disclosed. It's not shown in the figure 41. Leave that to me. We don't get to Tronso if you're right about that. Yeah, correct. As to the Tronso issue, it was cited in the motion papers below. It was absolutely in play. The issue in Tronso is disparagement of the prior art and what solutions were proposed in the application. In this application, it disparaged the prior art in 2009. Well, you're telling me that as a matter of law. What the reference teaches is a question of fact under our jurisprudence. All I'm saying is I didn't see expert declarations going back and forth on what I'm calling the Tronso issue. Correct, Your Honor. There were not competing expert declarations. The 2009 application itself sets forth the problem in its text that it was purporting to solve. Well, you're saying we can resolve. You and I don't have to waste your time over this. But, I mean, you're saying that this court ought to answer the question as a matter of law whether or not the judge was right on his view of Tronso as opposed to sending it back and allowing that issue to be ventilated in front of the jury. Correct. That would be one path to affirming the judgment below. Well, isn't that important? Because if the court was correct in its reliance on Tronso, then perhaps there's support for the decision for the disregard of the expert declaration. If the district court was wrong with respect to Tronso, then perhaps the expert declaration does raise a genuine issue of material fact. No, I would disagree with that, Your Honor, because the declaration was conclusory on every point that it purported to address. It has no fact, no analysis, no reasoning behind it. And under the Tenth Circuit Matheson case we cited, and this court's jurisprudence following Arthur A. Collins, that declaration is really worth nothing as far as creating an issue of material fact that's summary judgment. The expert addressed none of the issues. And going back to the Tronso issue, if I might, that issue was squarely presented below, and the expert declaration is really one of the patent applicants. But in any event, he did not analyze any text in any of the applications when the basis of the motion was the text in these applications discloses only a watchlist embodiment. It's only solving a problem in one way of water getting into the assembly, and that is using a washer. And every application down the line in the chain was more and more precise about the washer being an important and essential and necessary aspect of these roof-mount assemblies that were being claimed. And the expert did nothing on that, didn't even purport to have read the intervening applications. He did not address the text in the 2009 application, any of the figures in the remaining applications, to try to raise an issue of fact about what a person of skill in the art would take from the text of the 2009 application and each of the following disclosures, which got more and more precise as time went on, up to the 2012 application where the title of the application is roof-mount ceiling assembly. Can you point to us in the record the sections of the discussions in the motions below dealing with Tronzo? Do we have that in our record? Yes, Your Honor, the summary judgment papers are in the record. Help me out a little bit. So the opening summary judgment motion begins at Appendix 2173. Where is it? Tronzo. It appears that the original pagination perhaps was overwritten by the appendix page numbers, making it a bit more difficult to find. Thank you. This is your summary judgment motion? Correct, Your Honor. Page 16 of the motion, so I can see where it's cited and for what proposition. Correct. And the idea is not just Tronzo. Which page would it be here in the record? It appears that the original pagination on the brief was overwritten by the appendix page sites, Your Honor. You should know the appendix page. The table of authorities shows that Tronzo is cited once at page 16 without a pencil. But I can't, which one is page 16 and what we have? 2183. Thank you. And that specifically is a discussion or a cite to Tronzo, but... But it's not in the context of genus species. Correct, Your Honor. So your earlier characterization of this was that there was a luxurious discussion of the genus species issues in the briefing. That doesn't appear to be the case. Is there any other citation? Did the other side say anything about Tronzo in its response to the summary judgment motion? I'm not sure that they did, Your Honor, raise that issue. All I'm quibbling about is that it sure looked to me as if Tronzo as an invalidating proposition here based on the genus species theory was something that the judge no doubt picked up after having read Tronzo, which you cited for a plain vanilla proposition. Correct, Your Honor. However, the Tronzo case is just one in a line of cases. I understand that. It seems to me that the case law post-Tronzo suggests that if you're going to use a genus species theory in the written description environment, it's a rather complicated issue rather than a simple-minded issue. Perhaps on another record it would be, Your Honor. However, in this context, the issue was clearly presented in the motion. I agree with you that probably the teeter-totter on the Tronzo issue is leaning strongly in your favor, but the question is was there enough evidence to take this to the jury on those issues? You don't have to put up enough evidence to win to get to the jury in our system. Fair enough, Your Honor, but there must be enough evidence to get to the jury. That's something that the issue is now ventilated. The panel, I'm pretty sure, will address that issue. In order for you to walk away from here with a victory that wipes out all the claims, assuming for purposes of argument we don't buy your concession of infringement in validity by anticipation argument because it wasn't rated below, you need to get rid of the washerless claims across the board. You've got to get us to agree that the judge was right on Tronzo, right? Or agree that right on our analysis. Or agree that figure 41, we ought to just tear that page out of the record and throw it away for purposes of your argument. You think 41 can't be shown to disclose a washerless embodiment? That's correct, Your Honor. We think we've shown that. You don't raise Tronzo and its effect on the assembly judgment order in your response, correct? In our response to? In your red brief? Well, we do address the district court's opinion in the red brief, and the court should affirm on that ground, Your Honor. That was addressed, I believe, at page 21 of the red brief at the beginning of that discussion. Through about page 23, we discussed the ways in which the district court got it right, and the only genus that the other side has identified. It's 23. Page 23 of the red brief? Yes. Here's your answer. Correct. That's part of the section beginning on page 21. That's where it is located in the record. And the only genus identified is supposedly on appeal, a genus of washerless assemblies. That doesn't make any sense in the context of these patents, and there's no expert or any other evidence to back that up, that washerless assemblies were part of a genus that solved any of the identified problems. No. Okay. You're out of time. Thank you. And thank you for your argument. Thank you. Mr. Gunter? Thank you, Your Honor. So if I could address just a few of those points. I think that the basic premise of whether every embodiment requires a washer, I think the answer to that has to be no, because we have a figure 41 in the underlying specification in which there is no washer. The district court correctly found that point. Now, I would point the court's attention to the other side. Your adversary says even so. He said we ought to just throw that out because there's nothing in the specification of this 09 application that suggests that you had any interest whatsoever in a washerless assembly, that they say the purpose for which you heard the argument and what's your responsibility. Correct, Your Honor. So I think we'd cite to specifically 41 in the corresponding text that don't have a required washer, as well as other language in the 301 application that talks about other ways in which a watertight seal is made. It talks about an overlay shingle. It talks about glue and tar being used. Those are all things that contribute to a watertight seal, like a washer would contribute to a watertight seal. But it doesn't necessarily mean that a washer must be in every single embodiment, particularly because we have- Those structures that you just described wouldn't deal with a problem of environmental deterioration of the effectiveness of the seal, right? If there was a washer present. No, but I mean if you were using glue or something else, you'd have a similar environmental deterioration issue, wouldn't you? I think that according to the 301 specification, that can be used to prevent water entry. The entire point is you're not wanting water- Your adversary's argument was there's a double barrel shotgun in your face here. One is your water issue, but the other is you want to be able to make certain that whatever you're using to protect the water is itself protected from the environment, which means you have a recess. The recess is for a washer. A recessless structure that didn't have a washer in it would be problematic, wouldn't it, for the functioning? Not necessarily. If you had a situation that had a recess that didn't have a washer in it? Not necessarily. I think there could still be a recess that has the ridge arm that does not contain a washer. But under the description of the apparatus in the 2009 application, that is all about having a washer and all about having a watertight seal. Does it make sense to disregard all of that on the basis of one figure? On that point, I would say that it's clearly not all about only having a washer because there are embodiments without a washer. At the lower level, defendants raised some of these statements found in the earliest applications throughout the chain that said there must be- All embodiments must have a washer. The district court looked at that and appropriately found that's talking about the specific embodiments that those statements are found in context. How does the 2009 application contemplate the use of types of attachments in a washerless assembly beyond the use of attachment bracket 1700? I would think at pivots page 2225, there's a site that combinations and sub-combinations and permutations of these relatively few mechanical components are within the scope of the 301 application. Any other questions? We thank the parties for their arguments.